IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| MINNESOTA MINING AND MANUFACTURING COMPANY and 3M INNOVATIVE PROPERTIES COMPANY | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 00-CV-1483 DWF/AJB |
| v. | § | |
| KOSMA-KARE INTERNATIONAL, LLC | § | |
| Defendant. | § | |

**CONSENT JUDGMENT**

The parties have reached agreement on terms of settlement and mutually consent to the following findings of fact, conclusions of law, and relief. This Court has considered these findings, conclusions, and the relief granted and concludes that they are appropriate and should be entered as a judgment in this action.

Based upon all records herein, the Court makes the following findings of fact and conclusions of law:

**PARTIES**

1. Minnesota Mining and Manufacturing Company ("3M Company") is a Delaware corporation having its principal place of business at 3M Center, 2501 Hudson Road, St. Paul, Minnesota 55144.

2. 3M Innovative Properties Company ("3M IPC") is a Delaware corporation having its principal place of business at 3M Center, 2501 Hudson Road, St. Paul, Minnesota 55144. 3M Company and 3M IPC are collectively referred to as "3M".

FILED SEP 15 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD SEP 15 2000
DEPUTY CLERK

3. Kosma-Kare International, LLC ("Kosma-Kare") is a limited liability company organized and existing under the laws of New Jersey and having its principal place of business at 243 Veterans Blvd., Carlstadt, New Jersey 07072.

## NATURE OF THIS ACTION; JURISDICTION OF THE COURT

4. This is an action for design patent infringement under 35 U.S.C. § 1 *et seq.*; trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"); trademark infringement and unfair competition under Minnesota common law; deceptive trade practices under Minnesota Statutes § 325D.44; and unjust enrichment under Minnesota common law.

5. This Court has personal jurisdiction over Kosma-Kare because: a) it engaged in out-of-state conduct that resulted in harmful effects to 3M in Minncsota; and b) Kosma-Kare's infringing products have been sold in Minnesota.

6. Kosma-Kare's contacts with Minnesota form the basis for 3M's claims in this action.

7. This Court has jurisdiction over the subject matter of this action under 35 U.S.C. § 1 *et seq.*, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and 1338(b), and has supplemental jurisdiction under 28 U.S.C. § 1367(a) of claims under Minnesota law.

8. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Therefore, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## 3M'S BANDAGE PRODUCTS

9. 3M designs, manufactures, and distributes various adhesive bandages to retail consumers of health care products.

10. Approximately three years ago, 3M introduced under the brand name CLEAN SEALS a line of adhesive bandages having a novel and distinctive hexagonal shape (the "Hexagonal Trademark"). Representative samples of these bandages are attached as EXHIBIT A.

11. Although 3M changed the brand name of these bandages from CLEAN SEALS to NEXCARE WATERPROOF in 1999, 3M continues to use the Hexagonal Trademark in connection with these products. 3M's CLEAN SEALS-branded products are still available in retail stores.

12. Approximately two years ago, 3M introduced a second line of adhesive bandages bearing the Hexagonal Trademark. These bandages, sold under the brand name NEXCARE TATTOO DESIGNS, feature decorative images from several design collections, including "WILDLIFE," with wild animals; "SPORTS," with action sports scenes; "COOL," with "peace signs" and other "hip" symbols; and "FAVORITES," with smiling faces, roses, lady bugs, and geckos. Representative samples of these bandages are attached as EXHIBIT B.

13. On January 9, 1998, 3M filed intent-to-use applications with the United States Patent and Trademark Office ("PTO") seeking federal registration of the marks TATTOO, TATTOO DESIGNS, and TATTOO DESIGNS & Design for "adhesive bandages" in International Class 5. Each application matured into a federal registration: TATTOO, U.S. Reg. No. 2,291,484 (issuing November 9, 1999); TATTOO DESIGNS, U.S. Reg. No. 2,291,485 (issuing November 9, 1999); and TATTOO DESIGNS & Design, U.S. Reg. No. 2,298,821 (issuing December 7, 1999) (collectively "TATTOO registrations" or "TATTOO marks"). 3M's TATTOO registrations are valid, subsisting and in full force and effect. True and correct copies

of the certificates of registration for 3M's TATTOO registrations are attached as EXHIBITS C-E.

14. 3M's packaging for its CLEAN SEALS, NEXCARE WATERPROOF, and TATTOO DESIGNS products emphasizes the Hexagonal Trademark by incorporating a representation of the distinctive shape into the CLEAN SEALS, NEXCARE WATERPROOF and TATTOO DESIGNS logos. Representative samples of this packaging are attached as EXHIBITS F-H.

15. 3M has continuously sold bandages bearing the Hexagonal Trademark since introducing these products.

16. 3M's CLEAN SEALS mark and 3M's TATTOO marks are inherently distinctive.

17. 3M's Hexagonal Trademark is not functional.

18. As a result of 3M's use and promotion of the Hexagonal Trademark, the CLEAN SEALS mark, and the TATTOO marks in connection with adhesive bandages, these marks have become distinctive and now serve to identify and to distinguish 3M's bandages from bandages made by others.

19. 3M's Hexagonal Trademark, CLEAN SEALS mark, and TATTOO marks are protectable trademarks for adhesive bandages. 3M owns these trademarks, and its rights in these marks are valid and enforceable and have not been abandoned.

20. 3M's use of the Hexagonal Trademark, the CLEAN SEALS mark, and the TATTOO marks in connection with its adhesive bandages has resulted in substantial consumer awareness of these trademarks.

21. As a result of 3M's use and promotion of the Hexagonal Trademark, the CLEAN SEALS mark, and the TATTOO marks in Minnesota and elsewhere, 3M has developed valuable

goodwill and has acquired valuable common law rights in the Hexagonal Trademark, and the CLEAN SEALS mark, and the TATTOO marks.

22. On July 2, 1996, 3M filed a design patent application with the PTO for its novel bandage shape. On May 18, 1999, United States Design Patent No. 410,087 ("the '087 patent") entitled ADHESIVE BANDAGE duly and legally issued. 3M IPC is the owner of the '087 patent. 3M is the exclusive licensee of the '087 patent. The '087 patent is valid and enforceable. A true and correct copy of the '087 patent is attached as EXHIBIT I.

## KOSMA-KARE AND ITS ACTIVITIES

23. Kosma-Kare is engaged in the business of manufacturing, marketing, and selling adhesive bandages to retail consumers of healthcare products.

24. On May 24, 1999, Kosma-Kare filed intent-to-use trademark applications with the PTO seeking federal registration of the marks CLEAR SEALS and TATTOO SEALS for "adhesive bandages; medical adhesive tape; wound and surgical dressings; first aid kits" in International Class 5 (Application Serial Nos. 75/712,655 and 75/712,653, respectively).

25. At the Private Label Manufacturers Association trade show held in Chicago, Illinois in mid-November, 1999, Kosma-Kare displayed and distributed samples of a new line of adhesive bandages featuring decorative images such as "Teletubbies" figures and wrestling characters, which incorporate a shape virtually identical to the Hexagonal Trademark used by 3M for its adhesive bandages ("Kosma-Kare's Hexagonal Bandages"). Representative samples of the Kosma-Kare bandages featuring "Teletubbies" figures and wrestling characters are attached as EXHIBIT J.

26. Kosma-Kare began marketing a new line of adhesive bandages under the mark TATTOO SEALS in mid-November, 1999. Kosma-Kare's bandages sold under the TATTOO

SEALS mark also incorporate a shape virtually identical to the Hexagonal Trademark used by 3M for its adhesive bandages. Representative samples of the Kosma-Kare bandages sold under the TATTOO SEALS mark are attached as EXHIBIT K.

27. Kosma-Kare's Hexagonal Bandages and its products bearing the TATTOO SEALS mark are sold to retail consumers at some of the same retail outlets as 3M's products which bear the Hexagonal Trademark, the CLEAN SEALS mark, and the TATTOO marks.

28. Kosma-Kare's Hexagonal Bandages, and its products bearing the TATTOO SEALS mark, are sold in direct competition with 3M's NEXCARE TATTOO DESIGNS products.

29. 3M used its Hexagonal Trademark, its CLEAN SEALS mark, and its TATTOO marks in commerce which may lawfully be regulated by Congress long before the introduction of Kosma-Kare's Hexagonal Bandages and its products bearing the TATTOO SEALS mark and before Kosma-Kare filed its intent-to-use trademark applications for the CLEAR SEALS and TATTOO SEALS marks.

30. Kosma-Kare did not ask or obtain 3M's permission to use the Hexagonal Trademark in conjunction with Kosma-Kare's Infringing Hexagonal Bandages.

31. Kosma-Kare did not ask or obtain 3M's permission to use the CLEAR SEALS and TATTOO SEALS marks in conjunction with Kosma-Kare's bandages.

32. Kosma-Kare's Hexagonal Bandages are now sold, or offered for sale, in commerce in the United States, and in this District.

33. Kosma-Kare's products bearing the TATTOO SEALS mark are now sold or offered for sale in commerce in the United States.

**EFFECT OF KOSMA-KARE'S ACTIVITIES ON 3M AND/OR THE CONSUMING PUBLIC**

34. Kosma-Kare's unauthorized use of the TATTOO SEALS mark and the Hexagonal Trademark and its intended use of the CLEAR SEALS mark (collectively the "Infringing Marks") are likely to cause confusion, to cause mistake, and/or deceive customers and potential customers of the parties, at least as to some affiliation, connection or association of Kosma-Kare with 3M, or as to the origin, sponsorship, or approval of Kosma-Kare's goods.

35. Kosma-Kare's unauthorized use of the Infringing Marks falsely indicates to the purchasing public that Kosma-Kare's goods originate with 3M, or are affiliated, connected or associated with 3M, or are sponsored, endorsed, or approved by 3M, or are in some manner related to 3M and/or its products.

36. Kosma-Kare's unauthorized use of the Infringing Marks falsely designates the origin of Kosma-Kare's goods, and falsely and misleadingly describes and represents facts with respect to Kosma-Kare and its goods.

37. Kosma-Kare's unauthorized use of the Infringing Marks enables it to trade on and receive the benefit of goodwill in 3M's Hexagonal Trademark, the CLEAN SEALS mark, and the TATTOO marks, which 3M has built up at great labor and expense over several years. Kosma-Kare's unauthorized use also enables it to gain acceptance for its own goods, not solely on their own merits, but on the reputation and goodwill of 3M and its marks.

38. Kosma-Kare's unauthorized use of the Infringing Marks unjustly enriches Kosma-Kare at 3M's expense.

39. Kosma-Kare's unauthorized use of the Infringing Marks deprives 3M of the ability to control the nature and quality of products provided under its marks and places the

valuable reputation and goodwill of 3M in the hands of Kosma-Kare, over whom 3M has no control.

40. Kosma-Kare's unauthorized use of the Infringing Marks has caused irreparable injury to Plaintiffs. There is no adequate remedy at law for this injury.

41. Kosma-Kare's manufacture and sale of Kosma-Kare's Hexagonal Bandages constitutes design patent infringement of the '087 patent in violation of 35 U.S.C. § 1, *et seq.*

42. Kosma-Kare's unauthorized use of the Infringing Marks constitutes:

(a) infringement of 3M's federally registered TATTOO, TATTOO DESIGNS and TATTOO DESIGNS & Design marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

(b) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(c) trademark infringement in violation of the common law of Minnesota;

(d) unfair competition in violation of the common law of Minnesota;

(e) deceptive trade practices, in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44; and

(f) unjust enrichment of Kosma-Kare at 3M's expense.

**HAVING MADE THE PRECEDING FINDINGS OF FACT AND CONCLUSIONS OF LAW, THIS COURT ORDERS AS FOLLOWS:**

1. Kosma-Kare has until July 30, 2000 to phase-out by means of sale all products that bear the TATTOO SEALS and CLEAR SEALS marks;

2. Kosma-Kare has until July 30, 2000 to phase-out by means of sale all Infringing Hexagonal Bandages in its current inventory;

3. Prior to July 30, 2000:

(a) Kosma-Kare shall not sell its products that bear the Infringing Marks at a sales rate per week greater than the rate of sales of all products bearing the Infringing Marks during the week before February 11, 2000;

(b) Kosma-Kare may advertise or otherwise promote its products that bear the Infringing Marks provided that Kosma-Kare does not use any of 3M's intellectual property rights in those advertising and promotional endeavors, namely by using the TATTOO SEALS or CLEAR SEALS marks or by featuring the hexagonal shape of the bandages;

4. Within ten (10) days of the entry of this Consent Judgment, Kosma-Kare shall expressly abandon U.S. Trademark Application Serial No. 75/712,653 for the mark TATTOO SEALS and expressly abandon U.S. Trademark Application Serial No. 75/712,655 for the mark CLEAR SEALS;

5. Kosma-Kare shall not seek to register the TATTOO SEALS or CLEAR SEALS marks or other marks or domain names likely to cause confusion with or dilution of 3M's TATTOO marks or CLEAN SEALS mark.

6. After July 30, 2000, Kosma-Kare, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with Kosma-Kare, are preliminarily and permanently enjoined and restrained from:

(a) in any way using in connection with Kosma-Kare's goods 3M's Hexagonal Trademark, and any other bandage shape likely to cause confusion with or dilution of 3M's Hexagonal Trademark;

(b) from in any way using in connection with Kosma-Karc's goods, the marks CLEAR SEALS and TATTOO SEALS, and any mark or term likely to cause confusion with or

dilution of 3M's CLEAN SEALS mark and/or TATTOO, TATTOO DESIGNS, and TATTOO DESIGNS & Design marks, including but not limited to the term TATTOO and variations thereof; and

(c) manufacturing, causing to be manufactured, selling, distributing, offering to sell, advertising, promoting, or otherwise dealing, directly or indirectly, in any way, in any adhesive bandage that infringes the patented design, or any colorable imitation thereof, protected by U.S. Design Patent No. 410,087.

7. Kosma-Kare may manufacture, market and sell its bandages in shapes that are identical to the size and shape of the four bandages depicted in EXHIBIT L, which is attached hereto. Kosma-Kare may also manufacture, market and sell its bandages in the same shape and proportions as the bandages shown in Exhibit L but in different sizes.

**SO ORDERED** this 15th day of September, 2000.

Honorable Judge Donovan W. Frank
United States District Court Judge

The parties hereby agree to the terms of this Consent Judgment:

Approved as to form:

Charles H De La Garza /pg   August 11, 2000

Charles H. De La Garza #281396
Timothy M. Kenny #247716
Patrick J. Gallagher #294202
FULBRIGHT & JAWORSKI, L.L.P.
4850 U.S. Bank Place
601 Second Avenue South
Minneapolis, MN 55402-4320
(612) 321-2800
(612) 321-9600 (fax)

Louis T. Pirkey
Michael S. Metteauer
FULBRIGHT & JAWORSKI, L.L.P.
2400 One American Center
600 Congress Avenue
Austin, TX 78701
(512) 418-3000
(512) 474-7577 (fax)

Of Counsel:
Stephen W. Bauer
3M INNOVATIVE PROPERTIES
COMPANY
P.O. Box 33427
St. Paul, MN 55133-3427
(651) 736-4533

ATTORNEYS FOR PLAINTIFFS
MINNESOTA MINING AND
MANUFACTURING COMPANY
AND
3M INNOVATIVE PROPERTIES
COMPANY

Ronald Gould

August 18, 2000

Ronald Gould
MATHEWS, COLLINS, SHEPHERD &
GOULD, P.A.
100 Thanet Circle, Suite 306
Princeton, N.J. 08540-3674
(609) 924-8555
(609) 924-3036 (fax)

ATTORNEYS FOR DEFENDANT
KOSMA-KARE INTERNATIONAL, LLC